## MILLER v. CHICAGO & A. R. CO.

(District Court, S. D. New York. June 11, 1912.)

CORPORATIONS (§ 584*)—CONSOLIDATION OF RAILROAD COMPANIES—RIGHTS OF NONASSENTING STOCKHOLDER.

The articles of incorporation of a consolidated railroad company, composed of two constituent companies, each of which owned and operated lines of road, and one of which owned the greater part of the stock of the other, after providing for an issue of prior lien stock to be exchanged for the outstanding common and preferred stock of the other, further provided that, until such exchange was fully made, holders of unexchanged stock should "continue to have the right to share proportionately in accordance with the existing respective rights of said two classes of stock in the earnings and assets" of such constituent company, "as if the said consolidation and merger had not taken place" and the entire shares of stock of the constituent company were still outstanding. Nearly all of the stockholders assented to the consolidation, which was legally made, and the consolidated company operated the lines of both original companies as a single system. Held, that a nonassenting stockholder, who refused to exchange his stock, did not have

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an absolute right to a proportionate share of the earnings of the old company, but only, as before the consolidation, to such dividends as the directors might declare out of the earnings, and that a court of equity would not require the consolidated company to keep accounts showing the exact earnings of the property of each constituent company, which not only could not be done, but would impose an unnecessary and unreasonable burden on the majority stockholders, but that all he was entitled to was fair and equal treatment with other stockholders of the same class, and such a system of keeping the accounts as the directors might reasonably establish; it not appearing that he had suffered any damage or loss therefrom, or because of the consolidation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343–2347; Dec. Dig. § 584.*

Rights and liabilities of stockholders of railroads on consolidation, see note to Bonner v. Terre Haute & I. R. Co., 81 C. C. A. 480.]

In Equity. Suit by William Starr Miller against the Chicago & Alton Railroad Company. On final hearing. Provisional decree for complainant.

For former opinion, see 176 Fed. 379.

Philbin, Beekman, Menken & Griscom (Charles K. Beekman and Stephen P. Anderton, of counsel), for complainant.

Joline, Larkin & Rathbone (Arthur H. Van Brunt, Albert Stickney, and Joseph P. Cotton, Jr., of counsel), for defendant.

HOLT, District Judge. This is a suit in equity, brought by the complainant to enforce his rights as owner of 500 shares of the common stock of the old Chicago & Alton Railroad Company. The defendant, the Chicago & Alton Railroad Company, is a corporation formed in 1906 by the consolidation of a former company of the same name with another corporation called the Chicago & Alton Railway Company. Prior to 1900, the old Chicago & Alton Railroad Company was a railroad corporation, organized under the laws of Illinois, having a capital stock of $22,230,600, of which $18,751,100 was common and $3,479,500 was preferred stock. It owned and operated a road more than 800 miles in length. On April 2, 1900, the Chicago & Alton Railway Company was incorporated in Illinois, with an organized capital of $40,000,000, consisting of $20,000,000 preferred and $20,000,000 common stock. On the same day the Alton Railway acquired a line of railway about 58 miles in length, and took from the old Alton Railroad a lease of all its franchises and property for 99 years. By the provisions of the lease, the rental to be paid to the old Alton Railroad by the lessee was interest on its bonded indebtedness, rentals paid to leased lines, taxes, assessments, and governmental charges on the old Alton Railroad, and "an amount equal to the net earnings of the railroads and premises hereby demised, such net earnings to be ascertained by deducting from the gross income or receipts of such railroads and premises the payments" above mentioned, "and any other payments which it may have to make or incur under or by virtue of this lease." Thereafter, from April, 1900, to March, 1906, the two roads were operated as one united operating system, and

dividends were declared to the stockholders of the old Alton Railroad, based on its net earnings ascertained by the following method: Those earnings and expenses which could be assigned exclusively to either road were so assigned, and other general expenses were figured by a method of approximation. Thus earnings arising exclusively from the operation of either company were credited exclusively to such company, and such expenses as maintenance of way and structures, taxes, and traffic originating and terminating on the same line, were charged exclusively to the road on which such expenditures were made. But a large class of earnings, such as through interchangeable traffic, and passenger and mail earnings, and a large class of expenses, such as maintenance of general equipment, transportation expenses, and hire of foreign equipment, which resulted from the joint operation of the two roads, were allocated to each road in proportion to the general volume of business done and earnings made on each road, with the result that the net earnings of the old Alton Railroad Company during the period of the lease were computed at $19,687,392.42, and of the Alton Railway at $731,242.38, and this computation is admitted to be correct, for the purposes of this suit, by the parties to it. A dividend of 8 per cent. per annum was paid during the period of the lease to the complainant on his stock in the old Alton Railroad, based upon such computation of net earnings.

On March 8, 1906, the old Alton Railroad and the Alton Railway were consolidated by proceedings taken under the statutes of Illinois, and it is conceded by the parties to this suit that the consolidation was duly and properly effected under the Illinois statutes. At that time there were outstanding 34,795 shares of preferred and 187,511 shares of common stock of the old Alton Railroad, most of which were held by the Railway Company. The articles of consolidation provided for an issue of $40,000,000 of capital stock of the consolidated company, namely, 400,000 shares, of the par value of $100 each. Of this stock 8,993 shares were issued as prior lien and participating stock, which was exchangeable for the outstanding old Alton Railroad common and preferred stock held by other stockholders than the Railway Company, at the rate of 2 shares for the common stock and 3 shares for the preferred. The articles provided that the holders of the shares of such prior lien stock should be entitled to receive cumulative preferred dividends at the rate of 4 per cent. per annum, payable semi-annually, before any dividends should be declared or paid upon any of the other issues of stock of the consolidated company. In case of liquidation of the consolidated company, the owners of prior lien stock were to be paid the par value of their shares, and any accumulative unpaid dividends, with interest, in priority to any distribution to the holders of the other stock of the consolidated company. The articles further provide as follows:

"Article IV. Until all of the 73 shares of preferred stock and 4,387 shares of common stock of the party of the first part, not now owned by the party of the second part, shall have been exchanged for prior lien stock of the consolidated company as herein provided, every holder of any such unexchanged share of such preferred stock or of such common stock of the party of the first part shall continue to have the right to share proportionately, in

accordance with the existing respective rights of said two classes of stock, in the earnings and assets of the party of the first part hereby consolidated and merged into the party of the second part as if the said consolidation and merger had not taken place and the entire capital stock of the party of the first part, now consisting of 34,795 shares of preferred stock and 187,511 shares of common stock, were still outstanding."

Article V contains a provision at the end to substantially the same effect.

The complainant did not exchange his 500 shares of common stock for the so-called prior lien and participating stock, but has held them ever since. After the consolidation, on November 5, 1906, defendant tendered complainant its check for $2,000 as a dividend declared on May 24, 1906, in respect to the prior lien stock for which complainant's stock was exchangeable. This check was returned, with a refusal to accept any payment as a dividend in respect to prior lien stock. But the complainant demanded payment of at least $2,000 on account of the dividend to which he was entitled, and defendant thereupon paid him $2,000. Another check for $2,000 was tendered complainant on account of dividends for the period ending December 31, 1906, was refused to be accepted as a dividend on prior lien stock, but was accepted on the same terms as the previous one. Since that time the defendant has tendered to complainant on various occasions checks for dividends similar to those issued to the holders of prior lien stock, which the complainant has refused to accept.

In 1908 the complainant brought this suit in behalf of himself and of other stockholders of the old Alton Railroad similarly situated. No other stockholders have joined in the suit. The relief prayed for in the bill is that the defendant may be adjudged by this court to hold the franchises, properties, assets, and earnings of the old Alton Railroad Company as trustee to the extent that the rights and equities of the complainant may be perpetually preserved and protected, and that the defendant may be perpetually enjoined from in any way assuming, exercising, or enjoying the ownership of the franchises, properties, and assets of the old Alton Railroad, and from in any way applying, appropriating, distributing, or expending any part of the earnings derived by defendant therefrom, and from paying out of such earnings any dividends on defendant's capital stock, or any interest on any obligations incurred by said Alton Railway or by defendant since the consolidation, without keeping accounts and books of account showing correctly and truly all the business and earnings derived as aforesaid, and the application, appropriation, distribution, and expenditure thereof by defendant, and without paying to complainant dividends on the stock owned by him and his proportionate share of the earnings and profits derived from the old Alton Railroad Company as if said articles of consolidation had not been made, and that the complainant may have an accounting of such earnings.

The complainant's claim seems to be principally based on the expression in the provisions of the articles of consolidation that the owners of the old Alton Railroad stock shall "have the right to share proportionately in accordance with the existing respective rights of

said two classes of stock in the earnings and assets of the consolidated road." A stockholder has a right to share proportionately in the assets of a corporation, if it is wound up; but he has not a right to share proportionately in the earnings of the corporation so long as it is a going concern. He has a right to such dividends as the directors may declare out of the earnings, and his right under these sections to share proportionately in the earnings is stated to be in accordance with the existing respective rights of said two classes of stock. So long, therefore, as the defendant continues to operate the roads, complainant's right to share proportionately in earnings is his right to do so in accordance with the rights which he had at the time of the consolidation, and those rights were, not to directly share proportionately in the earnings, but to receive such dividends as might be declared by the directors, based upon the earnings.

As I understand the complainant's claim, it is, in substance, that the defendant should keep its accounts so as to show the exact earnings and expenses of the old Alton Railroad, as they would have appeared if it had never been leased or consolidated with the Alton Railway. Obviously this is impossible, unless the two railways cease to be operated as one road. There are certain earnings and expenses which can be accurately charged exclusively to the road to which they belong; but there are a large number of other general operating expenses which must be apportioned. That was done during the life of the lease without any objection by the complainant, and there is no reason shown on the record why it should not continue to be done since the consolidation. The proceedings for the consolidation are admitted to have been legal, and the consolidation valid. The great majority of the stockholders are apparently satisfied with the consolidation, and with the manner in which the business is now done and the accounts kept; and, in my opinion, it is not the duty of a court of equity to enforce an unreasonable demand, based on a doubtful claim of technical legal right, the alleged violation of which has not caused any actual damage, when the enforcement of such right would cause great inconvenience and expense to a large number of others concerned. Cella v. Brown, 144 Fed. 742, 75 C. C. A. 608; Texas, etc., Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385; Beasley v. Texas, etc., Co., 191 U. S. 492, 24 Sup. Ct. 164, 48 L. Ed. 274.

If the complainant is entitled to such an accounting as he demands, every other stockholder of the old Alton Railroad, if any remain, can maintain a like suit, and the defendant would be subjected to having its entire accounts, covering an enormous business for many years, repeatedly subjected to minute scrutiny and investigation, involving great labor and expense. The complainant, moreover, in my opinion, has no legal right to such an accounting as he demands in this case. A stockholder cannot sue for dividends, nor, under ordinary circumstances, can he sue for an accounting, in order to establish a basis for dividends. He is entitled to an equality of treatment with other stockholders of the same class; but it is for the directors of any corporation to determine what dividends shall be declared, and for the direct-

ors to keep the accounts of the corporation in the manner which they deem appropriate, provided that in doing so they treat the stockholders and all others interested in it fairly and justly. The computation made by Mr. Benson of the earnings of the old Alton Railroad, made upon precisely similar lines to those under which such computation was made during the six years that the lease continued, and to which the complainant never made any objection while taking the dividends based upon such a method of computation, furnishes, in my opinion, all the facts necessary to determine what dividends the complainant is entitled to. By that computation it appears that the aggregate amount of the dividends tendered to the complainant exceeded the amount which he would have received, if they had been computed as they were computed during the period of the lease, by about $7,000.

The complainant may, at his option, take a judgment in this case, either for the amounts which have been tendered him by the defendant, without interest, or for dividends computed on the accounts as made up by Mr. Benson and introduced in evidence in the record, with interest; and if he elects to take such a judgment, the bill, if necessary, may be amended so as to authorize such a recovery, although, as it contains a general demand for damages, any amendment seems hardly necessary. If the complainant refuses to take judgment for either of these amounts, the bill is dismissed. In any case, the defendant is awarded the costs of the suit.